IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

```
ANDREW G. EDISON,                  }
                                   }
     Plaintiff,                    }
                                   }         CIVIL ACTION NO.
v.                                 }         09-AR-2106-S
                                   }
CITY OF BIRMINGHAM, ALABAMA,       }
et al.,                            }
                                   }
     Defendants.                   }
                                   }
```

**MEMORANDUM OPINION**

Before the court is the motion of defendants, City of Birmingham ("City"), A.C. Roper ("Roper"), chief of the police department of City, and James Jackson ("Jackson"), a police officer of City, (collectively "defendants"), for summary judgment (Doc. 16). Plaintiff, Andrew G. Edison ("Edison"), filed his complaint in the Circuit Court of Jefferson County, Alabama. It was removed to this court by defendants. Edison is himself a police officer with the City. His complaint would not have survived Rule 12(b)(6) scrutiny if a Rule 12(b)(6) motion had been filed. For instance, Edison does not allege whether he is suing Roper and Jackson in their official capacities, or as individuals, or in both capacities. The court therefore travels on the assumption that Roper and Jackson are sued only individually. In his complaint, Edison asserts: 1) some sort of breach of duty; 2) failure to train; 3) assault and battery; 4) false imprisonment; and 5) a

1

violation of 42 U.S.C. § 1983 ("§ 1983"). After defendants filed their Rule 56 motion, Edison filed a motion to strike all evidentiary materials submitted by defendants in support of their motion for summary judgment. (Doc. 19). For the reasons that follow, Edison's motion to strike will be denied, and defendants' motion for summary judgment will be granted.

## **FACTS**

Because of the procedural posture, all arguably admissible evidence is considered in the light most favorable to Edison. The application of this principle is difficult in this case because Edison has submitted no evidence whatsoever. The most important evidence offered by defendants is Edison's deposition (Exhibit A). When defendants filed their motion, three affidavits (Exhibits B, C, and D) were unsigned. Defendants promptly corrected this shortcoming after the court gave its permission, and well before Edison responded to the motion. Edison's response to defendants' summary judgment motion strangely relies upon defendants' statement of undisputed facts and defendants' evidence, except that he inconsistently denies that they reflect the true facts or are admissible. Without filing any counter-affidavits, Edison responds to defendants' motion by repeating his already rejected argument that the supporting affidavits were unsigned and/or that they contain hearsay. (Doc. 19). If, under Rule 56 consideration, a party fails to deny with evidence an assertion of material fact,

the court may, pursuant to Rule 56(c), "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2)-(3). As a result of Edison's failure to challenge defendants' assertions with any evidence, the court considers the facts asserted by defendants as undisputed. As will hereinafter appear, a good explanation for Edison's not offering counter-affidavits, may be that the material facts as recited by defendants are true. Of course, if defendants' submissions themselves reveal a dispute of material fact, summary judgment would not be appropriate. Edison does not move to strike his own deposition.

On August 12, 2006, City police officer, Teresa Colston ("Colston"), was dispatched on a domestic violence call involving a dispute between Edison and Reiko Lucky ("Lucky"), who was Edison's wife. (Doc. 16 at 3.) Colston took a statement from Edison stating that he was injured by Lucky on August 11, 2006, at about 8:00 p.m. during an argument. (*Id.*) Colston observed injuries on Edison's upper torso. (*Id.*) Edison signed a formal complaint affirming his charges. (*Id.*) As if Edison didn't already know it, Colston told him that she was required to file his complaint with the City and get a warrant of arrest, charging Lucky with domestic violence in the 3rd degree ("domestic violence 3rd"). (*Id.*) On

3

August 12, 2006, Colston obtained a warrant from a City magistrate, and arrested Lucky later that day. (*Id.*)

On November 15, 2006, Lucky was attending court ordered domestic violence classes. (*Id.* at 4.) During a group session, she spoke with Madalyn Roberts ("Roberts"), a social worker for the City's "Project Safe", about an altercation provoked by Edison. (*Id.*) Per protocol, Roberts referred Lucky to Sergeant James Jackson ("Jackson"), a domestic violence specialist, who interviewed Lucky that same day. She told Jackson that Edison had started a fight by repeatedly putting his finger in her face. (*Id.*) Lucky also told Jackson that as she was getting into her car in order to get away, Edison kicked the front car door, whereupon she struck him with a bottle of lotion. (*Id.*) Edison retrieved the lotion and poured it on her car and jumped into the back seat as Lucky was attempting to leave. (*Id.* at 5.) Edison then kicked her leg and pulled her across the front seat before Lucky was able to flee. (*Id.*) Lucky told Jackson that she was in fear for her life and was going to leave the state. (*Id.* at 4.) Jackson observed bruising on the back of Lucky's right hand. (*Id.* at 5.) Jackson told Lucky that he would get a warrant for Edison's arrest charging him with domestic violence 3rd. (*Id.*) Lucky signed an incident report affirming the truth of her statements. (*Id.*)

On December 11, 2006, nearly a month later, Jackson obtained a warrant for Edison's arrest. (*Id.*) There is no explanation for

4

this delay, unless by inference Jackson knew that the arrest would cause Edison's suspension, and Jackson wanted to give Lucky some time to calm down and retreat. She did not. On December 12, 2006, Edison turned himself in and turned over all of his police property. (*Id.*) Edison was investigated by an Internal Affairs officer for alleged violations of a police policy, namely, committing an offense which resulted in an arrest. (*Id.*) Edison was placed on administrative leave while his disciplinary action was in progress. (*Id.* at 6.) While on administrative leave, Edison was not allowed to work as a police officer. (*Id.*) Nine months later, on September 12, 2007, Lucky's charge of domestic violence 3rd against Edison was dismissed by the City court for want of prosecution because Lucky did not present herself as a witness, although she had been subpoenaed. (*Id.*) This nine month gap between the arrest and the dismissal goes unexplained, except by Lucky's statement that she was leaving the state. After the misdemeanor complaint was dismissed, Edison returned to work. (*Id.*) He makes no claim for lost wages.

## EDISON'S MOTION TO STRIKE

Edison's motion to strike all of the defendants' evidentiary materials, except his deposition, rests on two arguments: 1) the affidavits were unsigned and/or contain inadmissible hearsay; and, 2) the one-page Internal Affairs document is hearsay.

Because the submission of the unsigned affidavits was quickly

corrected, the only real argument is whether the testimony reflected in the affidavits would be admissible at trial. Pursuant to Rule 56(c)(4), affidavits or declarations "used to support or oppose a motion must be made on personal knowledge and set out facts that would be admissible in evidence" at trial. The affiant or declarant must also be "competent to testify on the matters stated." Each affidavit submitted by defendants is based on personal knowledge, and the testimony would be admissible at trial. Testimony could easily be offered to prove that the one-page Internal Affairs report is a record kept in the ordinary course of business. The document is not necessary to this court's decision. It is a routine report that adds nothing and subtracts nothing. Edison's motion to strike defendants' Rule 56 submissions will be denied.

## ANALYSIS

Edison's state law claims against City, Roper, and Jackson are "breach of duty", failure to train, assault and battery, and false imprisonment. They include the following language or a paraphrase thereof: 1) "defendants have a duty to plaintiff not to violate the law, not to use their position to harass and abuse, and to fully and completely review all evidence before arresting an upstanding police officer" (Doc. 1 at 4); 2) "Defendant, City of Birmingham, Alabama has a duty to hire, train, and supervise its officers and personnel including Officer James Jackson to ensure that NO officer

or person is ever arrested without probable cause" (emphasis in original) (*Id.*); 3) "defendants assaulted and battered Edison by touching him during a wrongful arrest" (*Id.* at 5); 4) defendants' conduct was an unlawful detention of Edison that deprived him of personal liberty; and, 5) Edison was deprived of a recognized liberty and/or property interest established under the Fourteenth Amendment of the United States Constitution in violation of §1983. (*Id.*)

**State Law Claims**

**False Arrest and Imprisonment, Assault and Battery, and Negligence**

The court gives Edison the benefit of every doubt. In his inartful complaint, he charges breach of certain alleged duties. There is no cause of action in Alabama for a breach of a duty not to violate the law. Edison next claims that defendants negligently, wantonly, or by some other wrongful conduct caused him embarrassment and humiliation. In order for probable cause for an arrest to exist, the arrest must be objectively reasonable under the totality of the circumstances. *Shortz v. City of Montgomery*, 267 F.Supp.2d 1124, 1127 (M.D. Ala. 2003) (citing *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998)). This objectively reasonable standard is met when "the facts and circumstances within the officer's knowledge of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing,

or is about to commit an offense." *Williamson v. Mills*, 65 F.3d 155, 158 (11th Cir. 1995). Additionally, the City court's decision nine months later to dismiss the charge does not mean that the earlier decision to arrest Edison was without basis in fact or law. *Shortz v. City of Montgomery*, *supra*, at 1128. "There is a substantial difference between the quantum of proof necessary to constitute sufficient evidence to support a conviction and that necessary to establish probable cause." *Kelly v. Serna*, 87 F.3d 1235, 1241 (11th Cir. 1996). The delay of the trial date is not traceable to any of the three defendants.

Alabama provides law enforcement officers immunity from state law tort claims arising out of the performance of a discretionary function. Code of Alabama §6-5-338 (1975). Alabama's discretionary function immunity, like §1983 qualified immunity, provides officers immunity from suit, not merely an affirmative defense. *Sheth v. Webster*, 145 F.3d 1231, 1238 n.4 (11th Cir. 1998).

Under Alabama law, if Roper's and Jackson's acts were discretionary, as they were, the burden shifted to Edison to demonstrate that defendants acted in bad faith, with malice, or willfully. *Sheth*, 145 F.3d at 1238-39. Edison offers no proof of bad faith, malice, or willfulness. Arrests like this one are discretionary without unusual circumstances that do not exist here. *See Ex parte Cranman*, 792 So.2d 392, 405 (Ala. 2000). The Code of Alabama §6-5-338(b) extends discretionary function immunity to the

municipality by whom a police officer is employed. *See Ex parte City of Gadsden*, 781 So.2d 936, 940 (Ala. 2000).

Here, Jackson had probable cause to arrest Edison. Lucky showed him bruises to support her claim. Edison was arrested pursuant to a formal complaint and a warrant of arrest signed by a magistrate judge, who is deemed to have determined that there was probable cause for the arrest and for Lucky's complaint against Edison to proceed. Jackson made an entirely justifiable, discretionary decision to execute the warrant on Edison. Defendants show, without dispute, that the same procedures followed by Jackson were those followed when Edison claimed to be the victim of domestic violence. Defendants offer the deposition testimony from Edison in which he admits that he had made more than twenty (20) domestic violence arrests using the same reasons for probable cause. (*See Edison Deposition* 16:15-18:10). Edison was not handcuffed when he turned himself in to the jail. He did not receive any physical injuries during his arrest. He was allowed to stay in the booking area during his time at the jail. He was not placed in the general population of jail inmates. He was allowed to remain in his civilian clothes. The fact of his arrest was not published in any newspaper. He was not fired. (*See Edison Deposition* 89:21-23).

A municipality cannot act with malice. *Montgomery v. City of Montgomery*, 732 So.2d 305, 311 (Ala. Civ. App. 1999). To repeat the

9

obvious, Edison fails to offer any proof of malice or bad faith on the part of Jackson, much less of Roper. Lucky and Jackson had never even met each other before the conversation that led to Edison's arrest. Roberts, the "Project Safe" social worker, is the one who contacted Jackson regarding Lucky's allegations. Jackson's contact with Edison at the arrest was his only contact with Edison. He had no motive except to perform his duty.

Defendants provide uncontradicted admissible evidence that Edison was arrested, processed, and released in the same manner as other citizens arrested for domestic violence. Edison was treated even better and with more deference than a similarly situated civilian defendant, because of his position as a police officer. Because Edison has not demonstrated and cannot demonstrate bad faith, malice, or willfulness, his state law claims will be dismissed.

**Federal Constitutional Claims**

**§1983 – City of Birmingham**

A municipality cannot be held liable under §1983 based on a theory of *respondeat superior*. *Monell v. New York City Dept't of Social Services*, 436 U.S. 658, 691 (1978). Municipal liability occurs only when there is a municipal policy or custom that caused constitutional injury. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166 (1991). Edison has not identified any municipal policy or custom that caused his

injury. *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). There is a three-part test for determining when the acts of a municipal officer create municipal liability: 1) the municipality officially sanctioned or ordered the act; 2) the actor was a municipal officer with final policy authority; or 3) the action was taken pursuant to a policy adopted by officials responsible under state law for making policy in that area. *Pembaur v. Cincinnati*, 475 U.S. 469, 480-83 (1986). If the municipality denies the existence of such an unconstitutional custom or policy as City does, the plaintiff must offer proof of "a widespread practice that, although not authorized by written law or expressed municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). In other words, a longstanding and widespread practice is considered to be authorized by policymaking officials only if they have been aware of it and failed to stop it. *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991). In this case, Edison has failed to produce any evidence of, or even to describe, any City policy that constitutes a violation of his protected rights. Edison's response to defendants' motion simply denies, without contradictory evidence, that the evidence set forth by defendants is true. Edison's response is insufficient to create an issue of material fact. As to all federal claims, summary judgment in favor of City will be granted.

11

injury. *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). There is a three-part test for determining when the acts of a municipal officer create municipal liability: 1) the municipality officially sanctioned or ordered the act; 2) the actor was a municipal officer with final policy authority; or 3) the action was taken pursuant to a policy adopted by officials responsible under state law for making policy in that area. *Pembaur v. Cincinnati*, 475 U.S. 469, 480-83 (1986). If the municipality denies the existence of such an unconstitutional custom or policy as City does, the plaintiff must offer proof of "a widespread practice that, although not authorized by written law or expressed municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). In other words, a longstanding and widespread practice is considered to be authorized by policymaking officials only if they have been aware of it and failed to stop it. *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991). In this case, Edison has failed to produce any evidence of, or even to describe, any City policy that constitutes a violation of his protected rights. Edison's response to defendants' motion simply denies, without contradictory evidence, that the evidence set forth by defendants is true. Edison's response is insufficient to create an issue of material fact. As to all federal claims, summary judgment in favor of City will be granted.

**§1983 - Chief Roper and Officer Jackson**

Roper and Jackson are both covered by the federal doctrine of qualified immunity because they were performing discretionary functions. Qualified immunity shields public officials from damage actions unless their conduct was unreasonable in light of clearly established federal law. *Elder v. Holloway*, 510 U.S. 510, 512 (1994). Public officers are afforded this immunity to protect them from "undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982). Whatever Roper and Jackson did or failed to do was not precluded by any well-known, or **not** well-known, constitutional proscription. Roper and Jackson were clearly acting within the scope of their discretionary authority when the allegedly wrongful acts occurred. The analysis on this score is the same as with the state tort claims. *Zeigler v. Jackson*, 716 F.2d 847, 849 (11th Cir. 1983). Jackson and Roper are entitled to qualified immunity, even if they crossed constitutional bounds that this court cannot find.

**False Arrest and Imprisonment**

Qualified immunity also shields Roper and Jackson against the constitutional claim of arrest without probable cause. If a reasonable officer could have believed the arrest to be lawful, and based on the information the officer possessed, the officer is protected by qualified immunity. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). "Even law enforcement officials who 'reasonably but

mistakenly conclude that probable cause is present' are entitled to immunity." *Id.* quoting *Anderson*, 482 U.S. 635, 641 (1987). Roper and Jackson needed only have **arguable probable cause** to arrest Edison, not probable cause in fact. *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1558 (11th Cir. 1993). Roper himself played no role in the arrest. Jackson was not required to disbelieve Lucky, especially after observing her bruises. Jackson's actions are authorized by Alabama Code, §§15-10-1, 15-10-3.

**Assault and Battery**

Ordinarily, a municipality is not responsible for assault and battery committed by a police officer, even though the acts of the officer were intentional and malicious. 18A McQuillin Mun. Corp., §53.80.40. In this case, no intentional or malicious conduct is suggested, much less proven. Edison was never physically seized. He turned himself in. He was never handcuffed and was only touched during the booking process for fingerprinting. Edison fails to show that any of the defendants' actions reaches anywhere near the level of assault and battery. For aught appearing, Roper was in Borneo when Edison's humiliation occurred. Jackson was the employee of City and not of Roper. Roper could not be vicariously liable.

**Duty to Train**

Inadequate police training or supervision can rise to the level of a "policy or custom" that is actionable under §1983 if the failure to train amounts to "deliberate indifference" to the rights

13

of an injured person. *Harper v. City of Dothan*, 353 F.Supp. 2d 1189, 1197 (M.D. Ala. 2004). To show "deliberate indifference," Edison must present evidence that City knew of a need to train and/or to supervise in a particular area, and that City made a deliberate choice not to do so. *Id.* Actual notice of a need to train and/or supervise its officers is required for City to be exposed to §1983 liability. *Id.* The municipality's knowledge of a need for training or supervision in a particular area must arise out of some express warning or a history of widespread misconduct in which constitutional rights were similarly violated. *Gold v. City of Miami*, 151 F.3d 1346, 1351 (11th Cir. 1998). There is no such widespread history shown by Edison and no warning. "Deliberate indifference by a municipality cannot be demonstrated merely by examining the actions of police officers during a single incident of unconstitutional conduct." *Griffin v. City of Clanton*, 932 F.Supp. 1359, 1371 (M.D. Ala. 1996).

Edison attempts to narrow his focus by arguing that Jackson was not properly trained on the specifics of how to make a domestic violence arrest. Jackson is not shown to have performed his duty in any way different from the routine manner in accordance with S.O.P. Without deviating, his training to do what he did must have been adequate. His only arguable violation of S.O.P. could be his delay in getting the warrant, but there is no proof offered by Edison of an S.O.P. that requires more speed, or that the short delay

proximately contributed to Edison's injury. Defendants point out that Jackson was ***specially*** trained in the area of domestic violence. He is assigned as a detective to the City's "Project Safe" division. Jackson trains officers of other municipalities about how to handle domestic violence cases. If anybody knows how to handle domestic violence cases, it was Jackson. Edison testified in his deposition that he himself had made over twenty (20) domestic violence arrests in the same manner in which his own arrest was carried out by Jackson. (*See Edison Deposition* 16:15-18:10). Edison has failed to demonstrate that any defendant failed to train Jackson, although Edison lumps defendants together in his complaint. Jackson was certainly not called upon to train himself. This only illustrates the sloppiness of the complaint, which fails even to describe who is being sued for what.

**Breach of Duty**

When Edison first alleged the anomolous duties: 1) to follow the law; 2) to refrain from using official positions to harass and abuse; and 3) to fully review all evidence before making an arrest, he may be making a good public policy argument, or quoting a training manual, but he is not stating Alabama causes of action. The fact that Jackson interviewed Lucky and observed her injuries gave him more than probable cause to file the complaint, to obtain the warrant, and to execute it. No harassment or abuse of position took place. Neither Jackson nor Roper is shown to be responsible

for Lucky's not showing up for trial. It is unfortunate that Edison's suspension lasted as long as it did, but no Alabama or constitutional tort caused it.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment will be granted. A separate order effectuating this opinion will be entered.

DONE this 27th day of April, 2011.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE